# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FLOOR64, INC., and<br><br>MICHAEL MASNICK,<br><br>  Plaintiffs,<br><br>  v.<br><br>UNITED STATES IMMIGRATION<br>AND CUSTOMS ENFORCEMENT,<br><br>  Defendant. | Civil Action No. 19-1499 |

## DECLARATION OF TONI FUENTES

I, Toni Fuentes, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

**1.** I am the Deputy Officer of the U.S. Immigration and Customs Enforcement ("ICE") Freedom of Information Act ("FOIA") Office. I have held this position since September 30, 2018 and am the ICE official immediately responsible for supervising ICE responses to requests for records under the FOIA, 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a (the "Privacy Act"), and other applicable records access statutes and regulations. Prior to this position, I have held numerous FOIA-related positions over the past 20 years to include: FOIA Director for the National Protection and Programs Directorate at the U.S. Department of Homeland Security ("DHS"); Government Information Specialist for Department of Justice, U.S. Marshal's Service, Office of General Counsel; Government Information Specialist for the Department of Defense, Office of the Inspector General's FOIA Office; FOIA Officer, Paralegal Specialist for Department of the Navy, NAVAIR/NAWCAD's Office of Counsel; Management and Program Analyst for Department of Homeland Security, Customs and Border Protection's FOIA Office; and FOIA Paralegal Specialist for the National Aeronautics and Space Administration's Office of Chief Counsel.

1

2. The ICE FOIA Office is responsible for processing and responding to all FOIA and Privacy Act requests received at ICE.

3. My official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office. I manage and supervise a staff of ICE FOIA Paralegal Specialists, who report to me regarding the processing of FOIA and Privacy Act requests received by ICE. Due to my experience and the nature of my official duties, I am familiar with ICE's procedures for responding to requests for information pursuant to provisions of the FOIA and the Privacy Act. In that respect, I am familiar with ICE's processing of the FOIA request dated December 14, 2018, that was submitted by Michael Masnick and Floor64, Inc., which is the subject of this litigation.

4. I make this Declaration in my official capacity in support of Defendant's motion for summary judgment in the above-captioned action. The statements contained in this Declaration are based upon my personal knowledge, my review of records kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties. The documents attached hereto are kept by ICE in the ordinary course of its business activities.

5. This Declaration describes how ICE responded to Plaintiffs' FOIA request. In addition, in accordance with the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), this Declaration explains the basis for withholding portions of the requested information pursuant to FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(D), 5 U.S.C. § 552 (b)(6), (b)(7)(C), and (b)(7)(D). ICE's *Vaughn* Index is attached hereto as Exhibit 1.

I. **PROCEDURAL HISTORY OF THE PLAINTIFFS' FOIA REQUEST AND THE INSTANT LITIGATION**

6. This suit stems from a FOIA request Plaintiffs sent to ICE on December 14, 2018. A true and complete copy of Plaintiffs' FOIA Request is attached hereto as Exhibit 2. The FOIA request was processed by the ICE FOIA Office and contained a request for the following records:

> "A full list of the domain names that were seized, any related court filings regarding the domain seizures and any email communications with the "high-profile industry representatives and anti-counterfeiting associations" regarding those seizures, as described in a November 26th press release, seen here: https://www.ice.gov/news/releases/over-million-websites-seized-global-operation"

7. By email dated December 17, 2018, the ICE FOIA Office acknowledged receipt of Plaintiffs' FOIA Request and assigned it ICE FOIA case number 2019-ICFO-24679. A true and complete copy of the December 17, 2018, email is attached hereto as Exhibit 3.

8. By letter dated February 19, 2019, the ICE FOIA Office sent a final response letter to Plaintiffs regarding 2019-ICFO-24679. The letter provided that "ICE has conducted a search of the ICE Offices of Homeland Security Investigations (HSI) and the ICE Office of Public Affairs (OPA) for records responsive to your request and no records were found." A true and complete copy of the February 19, 2019, letter is attached hereto as Exhibit 4.

9. By letter dated March 8, 2019, Plaintiffs appealed the ICE FOIA Office's response to Plaintiffs' FOIA request. A true and complete copy of the March 8, 2019, letter is attached hereto as Exhibit 5.

10. By letter dated March 18, 2019, ICE's Office of the Principal Legal Advisor ("OPLA") acknowledged receipt of Plaintiffs' appeal and assigned it appeal tracking number 2019-ICAP-00275. A true and complete copy of the March 18, 2019, letter is attached hereto as Exhibit 6.

11. By letter dated April 2, 2019, OPLA responded to Plaintiffs' appeal and informed Plaintiffs that ICE was remanding the appeal to the ICE FOIA Office for processing and re-tasking

to the appropriate office(s) to conduct a search to obtain any responsive documents. A true and complete copy of the April 2, 2018, letter is attached hereto as Exhibit 7.

   12.   On May 23, 2019, Plaintiffs filed the Complaint in this case.

   13.   By letter dated July 22, 2019, the ICE FOIA Office sent a final response letter to Plaintiffs regarding 2019-ICFO-24679, 2019-ICAP-00275, and the Complaint in this case. The letter provided that "[a] search of the HSI located records that were responsive to your request. For this production ICE reviewed 75 of potentially responsive records."[1] Additionally, the letter advised that portions of the 75 pages would be withheld pursuant to FOIA Exemptions 6, 7(C), and 7(E). A true and complete copy of the July 22, 2019, letter is attached hereto as Exhibit 8.

   14.   Upon litigation review, the ICE FOIA Office sent a supplemental final response letter to Plaintiffs, on October 21, 2019. The letter provided that the ICE FOIA Office has determined that the information previously withheld under FOIA Exemption (b)(7)(E) has either been lifted or is now being withheld under FOIA Exemption (b)(7)(D). Additionally, information previously withheld under (b)(6) and (b)(7)(C) is now also being withheld under FOIA Exemption (b)(7)(D). The ICE FOIA Office provided the updated pages of the July 22, 2019, production with those redactions lifted or with the redactions labeled as (b)(7)(D). A true and complete copy of the October 21, 2019, letter is attached hereto as Exhibit 9.

**II.   ICE'S STANDARD PROCEDURE FOR INITIATING SEARCHES IN RESPONSE TO FOIA REQUESTS**

   15.   When the ICE FOIA Office receives a FOIA request, the intake staff evaluates it to determine if it is a proper FOIA request per DHS FOIA regulation 6 C.F.R. § 5.3. Generally, a

---

[1] The July 22, 2019, letter also provided that ICE had withheld in full under Exemption (b)(7)(E) one Excel Spreadsheet. This notification was in error as the search for responsive documents in this case did not located any Excel Spreadsheets.

<s>
</s>

FOIA request is considered proper and in compliance with DHS regulations if it reasonably describes the records sought and the records are under the purview of ICE.

16. If a FOIA request does not reasonably describe the records sought, the ICE FOIA Office will seek clarification from the requester. If the requested information is under the purview of a DHS component other than ICE, the ICE FOIA Office will refer the request to the appropriate DHS component for processing and direct response to the requester. If the FOIA request seeks records under the purview of a government agency other than DHS, ICE FOIA informs the requester to contact the other government agency directly and ICE FOIA administratively closes the FOIA request.

17. Proper FOIA requests are entered into a database known as FOIAXpress and assigned a case tracking number. Based upon the requester's description of the records being sought and ICE FOIA's knowledge of the various program offices' missions, the ICE FOIA Office identifies the program office(s) likely to possess responsive records and tasks the appropriate program office(s) to conduct the necessary searches.

18. ICE records are maintained by leadership offices and/or within ICE directorates, namely, Enforcement and Removal Operations ("ERO"), Homeland Security Investigations ("HSI"), Office of Public Affairs ("OPA") and/or Management and Administration ("M&A"). Program offices within the leadership office and the ICE directorates are staffed with a designated point of contact ("POC") who is the primary person responsible for communications between that program office and the ICE FOIA Office. Each POC is a person with detailed knowledge about the operations of his/her program office.

19. Upon receipt of a proper FOIA request, the ICE FOIA Office will identify which program offices, based on their experience and knowledge of ICE's program offices, within ICE

are reasonably likely to possess records responsive to that request, if any, and initiates searches within those program offices. Once the ICE FOIA Office determines the appropriate program offices for a given request, it provides the POCs within each of those program offices with a copy of the FOIA request and instructs them to conduct a search for responsive records. The POCs then review the FOIA request, along with any case-specific instructions that may have been provided, and based on their experience and knowledge of their program office practices and activities, forward the request and instructions to the individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any. In conformity with the ICE FOIA Office's instructions, the individuals and component offices are directed to conduct searches of their file systems, including both paper files and electronic files, which in their judgment, based on their knowledge of the way they routinely keep records, would most likely be the files to contain responsive documents. Once those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn, provides the records to the ICE FOIA Office. The ICE FOIA Office then reviews the collected records for responsiveness and application of appropriate FOIA Exemptions.

20.     ICE employees maintain records in several ways. ICE program offices use various systems to maintain records, such as investigative files, records regarding the operation of ICE programs, and administrative records. ICE employees may store electronic records on their individual computer hard drives, their program office's shared drive (if the office uses one), DVDs, CDs, and/or USB storage devices. The determination of whether or not these electronic locations must be searched in response to a particular FOIA tasking, as well as how to conduct any necessary searches, is necessarily based on the manner in which the employee maintains his/her files.

21.     Additionally, all ICE employees have access to email.  ICE uses the Microsoft Outlook email system.  Each ICE employee stores his/her files in the way that works best for that particular employee.  ICE employees use various methods to store their Microsoft Outlook email files: for example, some archive their files monthly, without separating by subject; others archive their email by topic or by program; still others may create PST files of their emails and store them on their hard drive or shared drive.

22.     Records received by the ICE FOIA Office from the program office POCs are assigned to a FOIA processor who makes a determination whether the records are responsive to the FOIA request, or not.  If the records are responsive, the FOIA processor will redact information pursuant to the FOIA or the Privacy Act, as appropriate, while simultaneously ensuring that all reasonably segregated non-exempt information is released.

23.     Frequently, the ICE FOIA Office must coordinate between multiple program offices to ensure the program office records are properly redacted and information is correctly segregated.  Once the ICE FOIA Office completes its coordination efforts and all responsive records have been processed, the ICE FOIA Office releases the responsive records to the requester.

**III.   DESCRIPTION OF PROGRAM OFFICES TASKED WITH SEARCHING FOR RECORDS IN RESPONSE TO PLAINTIFFS' FOIA REQUEST**

24.     ICE is the principal investigative arm of DHS and the second largest investigative agency in the federal government.  Created in 2003 through a merger of the investigative and interior enforcement elements of the U.S. Customs Service and the Immigration and Naturalization Service, ICE now employs more than 20,000 people in offices in every state and in 48 foreign countries.

25.     The ICE FOIA Office determined that because of the subject matter of Plaintiffs' FOIA Request, HSI and OPA were the offices likely to have responsive records. The ICE FOIA Office instructed HSI and OPA to conduct a comprehensive search for records and to provide all records located during that search to the ICE FOIA Office for review and processing.

<b><u>OPA's Response to Plaintiffs' FOIA Request</u></b>

26.     OPA supports the agency mission by engaging with the news media, federal, state and local agencies and non-governmental organizations. Within OPA there is media relations, strategic communications, and the mission support branch. The Media Relations Branch includes 30 public affairs officers located in Washington, D.C. and around the country who are responsible for responding to local, national and international media inquiries, planning press events, crafting agency messaging and developing media campaigns. The Strategic Communications Branch of public affairs oversees the development and production of a wide variety of online, print and multi-media products, as well as writing executive level speeches, internal communication, managing ICE's online presence and developing national marketing plans for ICE and its programs. The mission support branch handles the day to day running of OPA's financial and administrative work and ensures that the other two branches are fully supported. When OPA receives a FOIA request, the OPA FOIA POC will review the request and task to the branch or branches within OPA that are likely to have responsive records.

27.     On December 17, 2018, the ICE FOIA Office tasked OPA in responding to Plaintiffs' request. Based upon the nature of the request for "domain names that were seized, any related court filings regarding the domain seizures and any email communications with the "high-profile industry representatives and anti-counterfeiting associations"" and the subject matter expertise of the OPA FOIA POC, OPA notified the ICE FOIA Office that OPA would not

reasonably be likely to have responsive records or would not reasonably be expected to have responsive records to this request. OPA then deferred to HSI in responding to the FOIA reqeust.

### HSI's Searches and Response to Plaintiffs' FOIA Requests

28.     HSI is a critical investigative arm of the DHS and is a vital U.S. asset in combating criminal organizations illegally exploiting America's travel, trade, financial and immigration systems. HSI's workforce includes special agents, analysts, auditors and support staff. HSI has broad legal authority to enforce a diverse array of federal statutes. It uses this authority to investigate all types of cross-border criminal activity including: financial crimes, money laundering and bulk cash smuggling; commercial fraud and intellectual property theft; cybercrimes; human rights violations; human smuggling and trafficking; immigration, document and benefit fraud; narcotics and weapons smuggling/trafficking; transnational gang activity; export enforcement; and international art and antiquity theft. HSI has 30 Special Agent in Charge ("SAC") principal field offices throughout the United States. The SAC offices are responsible for the administration and management of all investigative and enforcement activities within the geographic boundaries of the office.

29.     When HSI receives a FOIA tasking from the ICE FOIA Office, the request is submitted to HSI Records and Disclosure Unit ("RDU"), where the FOIA Section Chief reviews the substance of the FOIA request. Based on subject matter expertise and knowledge of the internal practices of offices within HSI, RDU tasks a geographic SAC office, program office and/or specific individual(s) to conduct searches of their file systems, including both paper files and electronic files, based on their knowledge of routine file maintenance where responsive records would most likely be located. If the FOIA request pertains to a specific operation, the program office responsible for that operation will be tasked. Employees tasked with conducting

searches, rely upon the language of the request, guidance from the FOIA Section Chief as well as their operational knowledge and subject matter expertise, to identify the specific search term(s) or combinations thereof, most likely to produce responsive records. Once searches are completed, the individuals and program offices provide any potentially responsive records to RDU to analyze for HSI law enforcement equities and recommend disclosures to the ICE FOIA Office. The ICE FOIA Office then reviews the collected records and disclosure recommendations and applies redactions to withhold statutorily exempt information before making a disclosure to the requester.

**30.** Within HSI is the Operation Technology and Cyber Division ("OTCD"). The OTCD supports ICE and HSI by improving methods for managing different types of information and operational technology, and directing how these tools are shared with other agencies and organizations. Programs and projects under the OTCD focus on merging methods and technology that result in better law enforcement operations. One element within OTCD is the Cyber Crimes Center ("C3"). C3 role is to conduct trans-border criminal investigations of internet-related crimes and is responsible for identifying and targeting any cyber crime activity in which HSI has jurisdiction.

**31.** The Global Trade Investigations Division ("GTI") is a program office that provides oversight and support for investigations of the U.S. import and export laws to ensure national security, protect the public's health and safety, stop predatory and unfair trade practices and to prevent terrorists, foreign entities and criminal organizations from illegally trafficking Weapons of Mass Destruction and transferring critical technology and arms to restricted or prohibited persons, groups or nations. Within GTI, there is the National Intellectual Property Rights Coordination Center ("IPR Center"). The IPR Center responsible for coordinating a unified U.S. government response to the growing threat of counterfeiting and has significantly expanded the

original multi-agency law enforcement and regulatory endeavor created to target IP crimes. The IPR Center comprises the Intellectual Property Unit and Commercial Fraud Unit that is also responsible for IPR Center's outreach and training. In addition, the IPR Center brings together 23 key federal and international agencies in a task force setting using a three-pronged approach to combat Intellectual Property (IP) and trade crime: interdiction, investigation, and outreach to the public and law enforcement.

32.     On December 17, 2018, the ICE FOIA Office tasked HSI with responding to Plaintiffs' FOIA request. RDU reviewed the request and, because the request referred to seizures and the internet, tasked OTCD C3 to conduct a search. Within C3, one Special Agent conducted a search of his computer and Outlook using the term "IPR" and "ICE IPR Center" based upon the press release provided by the Plaintiffs and his subject matter expertise. No records responsive to the request were located. One Special Agent conducted a search of his computer and Outlook using the terms "seized" and "website" based upon the press release provided by the Plaintiffs and his subject matter expertise. No records responsive to the request were located. One Special Agent conducted a search of Outlook using "Operation In Our Sites" based upon the press release provided by the Plaintiffs and his subject matter expertise. No records responsive to the request were located. However, this Special Agent did note on the returned search form that he believed the IPR Center may have responsive records. However, the IPR Center was not tasked to conduct a search at this administrative level and on February 19, 2019, the ICE FOIA Office notified the Plaintiffs that no responsive records were located.

33.     Upon appeal review, the Office of the Principal Legal Advisor (OPLA) contacted RDU on March 20, 2019 and requested that RDU review the previous "no records" response in regard to Plaintiffs' FOIA request. RDU reviewed the FOIA request and previous search and

determined that the wrong office within HSI was tasked to conduct the search. RDU then determined that the correct office that should be tasked was the IPR Center. On April 9, 2019, RDU forwarded Plaintiffs' FOIA request to GTI so that the IPR Center could conduct a search for responsive records.

34. Upon receipt of the FOIA request from RDU, the IPR Center FOIA POC reviewed the substance of the request and, based upon experience and knowledge of their office's practices and activities, determined that the Program Manager for "Operation in Our Sites" should be tasked with conducting the search. The Program Manger conducted a search of his computer and Outlook files using the name of the Operation as his search terms and produced 75 pages of responsive documents that were forwarded to HSI RDU for review. HSI RDU provided these 75 pages to the ICE FOIA Office for processing.

35. On September 13, 2019, ICE, through counsel, responded to follow-up questions from Plaintiffs regarding the responsive documents that were produced. Specifically, ICE provided that in regard to the domain seizures, ICE provided all records in its possession relating to the domain seizures. ICE further provided that of the websites that were criminally seized, the majority of them were seized by Europol, Interpol and police agencies from 26 different countries and that these partners did not share the domain names of those websites with ICE. Further, in regard to the remaining domain names, other industry partners were involved in the seizure of those websites and did not provide the domain names of those websites to the IPR Center. Lastly, ICE was not involved with and does not have any records relating to, any court filings relating to the seizure, civilly or criminally, of domain names.

**IV.    ORGANIZATION OF THE *VAUGHN* INDEX**

36. Pursuant to the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), a *Vaughn* Index accompanies this declaration; the *Vaughn* Index provides a description of each redaction and the corresponding FOIA exemption being applied.

37. The *Vaughn* index is in a table format. The first column contains the bates number prefix for the records produced. The second column contains the bates stamp suffix (page numbers) of the responsive records. The third column describes the category of withholdings taken on the documents (full or partial). The fourth column describes the redaction codes, which are citations to the sections of the FOIA Exemptions. The fifth column describes the underlying records and provides justifications for the asserted exemptions. The *Vaughn* index encompasses the responsive records produced by the program office. ICE produced one production in response to Plaintiffs' FOIA request containing 75 pages subject to withholdings pursuant to FOIA Exemptions (b)(6), (b)(7)(C), and (b)(7)(D).

## V. DESCRIPTION OF FOIA WITHHOLDINGS APPLIED TO RECORDS PROVIDED TO PLAINTIFFS

38. As outlined in the *Vaughn* Index, the ICE FOIA Office processed and produced the 75 pages to the Plaintiffs with portions redacted under Exemptions (b)(6), (b)(7)(C), and (b)(7)(D).

### A. FOIA Exemption (6)

39. FOIA Exemption 6 allows the withholding of information found in "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Records that apply to or describe a particular individual, including investigative records, qualify as "personnel," "medical" or "similar files" under Exemption 6. When applying this exemption to responsive documentation, the agency must balance the individual's personal privacy interest against the public need for the information.

### B. FOIA Exemption 7 Threshold

**40.** Exemption 7 establishes a threshold requirement that, in order to withhold information on the basis of any of its subparts, the records or information must be compiled for law enforcement purposes.

**41.** The information for which FOIA Exemption 7 has been asserted in the instant matter satisfies this threshold requirement. Pursuant to the Immigration and Nationality Act codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions. *See* 8 U.S.C. § 1103. ICE is the largest investigative arm of the DHS and the second largest investigative agency in the federal government. Created in 2003 through a merger of the investigative and interior enforcement elements of the U.S. Customs Service and the Immigration and Naturalization Service, ICE now has more than 20,000 employees and offices in all 50 states and 48 foreign countries, and is responsible for enforcing the nation's immigration laws, and identifying and eliminating vulnerabilities within the nation's borders.

**42.** There are three directorates within ICE, including, as relevant here, HSI. HSI investigates domestic and international activities that arise from the illegal movement of people and goods into, within, and out of the United States. These include, for example, immigration fraud, human rights violations, financial crimes, cybercrime, export enforcement issues, and human, narcotics, and weapons smuggling. In addition to criminal investigations, HSI oversees ICE international affairs questions and intelligence functions. As a threshold matter, the records and information located in response to Plaintiffs' FOIA request were collected and compiled by ICE law enforcement officers during the investigation of suspected violations of criminal laws. Therefore, the records and information located in response to the FOIA request were compiled for law enforcement purposes and meet the threshold requirement of FOIA Exemption 7.

### C. FOIA Exemption 5 U.S.C. § 552(b)(7)(C)

43.     FOIA Exemption 7(C) protects from disclosure records or information "compiled for law enforcement purposes" if a release of the records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C).

### D. FOIA Exemption 5 U.S.C. § 552(b)(6) and (b)(7)(C)

44.     When asserting Exemptions 6 and 7(C), ICE balances an individual's personal privacy interest against the public's interest in obtaining information that sheds light on ICE's performance of its statutory duties.

45.     Here, ICE applied Exemption 6 in conjunction with Exemption 7(C) to protect from disclosure the names, email addresses, and phone numbers of federal law enforcement officers, and the names, email addresses, and phone numbers of third parties.

46.     In regard to the information about federal law enforcement employees, by virtue of the positions held referenced in the responsive records, they are permitted access to official law enforcement investigation information. ICE gave consideration to the privacy interests of these federal law enforcement employees in not becoming targets of harassment - be it in the form of requests for authorized access to law enforcement information or requests for information about ongoing or closed investigations - and their interest in remaining free of interference in the performance of their duties by persons who are currently of interest to law enforcement or oppose the ICE mission. In addition, there are privacy considerations at issue in the interest of each of these individuals in remaining free from harassment and annoyance in conducting their official duties in the future, their interest in remaining free from harassment and annoyance in their private lives, and their interest in not being targeted by individuals in the future who may begrudge them.

**47.** Further, federal law enforcement employees who take part in highly-publicized or sensitive investigations or operations have an interest in keeping their involvement in such activities private in order to avoid an onslaught of media attention or stigma and undue public attention. These federal law enforcement employees face an increased risk of harassment or attack, and, therefore, have an increased privacy interest due to the nature of their work.

**48.** Regarding that information contained in the responsive records specific to other third parties, if released, this information would permit the identity of an individual to be directly or indirectly inferred. Third party individuals have a recognized privacy interest in not being publicly associated with law enforcement investigations through the release of records compiled for law enforcement purposes. The identities of persons named in law enforcement files (whether or not the named individual is the target of investigations or law enforcement actions) are properly withheld under Exemptions 6 and 7(C) in recognition of the stigmatizing connotation carried by the mere mention of individuals in law enforcement files.

**49.** In addition, ICE considered the privacy interests of the third parties in remaining free from embarrassment, humiliation, annoyance, harassment, intimidation, unofficial questioning, retaliation or physical harm for having been identified in these law enforcement records.

**50.** Furthermore, such information, if disclosed to the public or to a third-party requester without the permission of the individual, could expose the individuals to identity theft and may reasonably lead to unwanted contact from persons that might seek to harm them.

**51.** ICE determined that the disclosure of the information described in Paragraph 44 above would constitute a clearly unwarranted invasion of personal privacy and thus applied Exemption 6. In addition, ICE determined that disclosure of the information described in

Paragraph 44 above was compiled for law enforcement purposes and, if released, would cause foreseeable harm to the federal law enforcement officers and the third-parties named in the records, could reasonably be expected to constitute an unwarranted invasion of personal privacy, and thus applied Exemption 7(C).

52. Having determined that the individuals identified in the responsive records have a cognizable privacy interest in not having their information released, ICE FOIA then balanced the interest in safeguarding the individuals' privacy from unnecessary public scrutiny against the public's interest in obtaining information that would shed light on the operations and activities of ICE in the performance of its statutory duties. Plaintiffs has failed to articulate any public interest that could be advanced by releasing this information and in each instance where Exemptions 6 and 7(C) were applied, the redaction was limited to the name of the individual or other personally identifiable information, which if released, would not shed any further light as to the operations or activities of ICE. All of the information surrounding the redactions was released and the limited extent of the redaction is readily apparent from the context of the records.

53. Based upon the traditional recognition of strong privacy interests in law enforcement records, the categorical withholding of third party information identified in law enforcement records is appropriate. Moreover, the third parties identified in these records have not provided consent to the release of their personally identifying information as required by 6 C.F.R. §§ 5.3(a)(4) & 5.21(d).

E.     **FOIA Exemption 5 U.S.C. § 552(b)(7)(D)**

54. FOIA Exemption 7(D) protects from disclosure information "compiled for law enforcement purposes [which] could reasonably be expected to disclose the identity of a confidential source, including a state, local, or foreign agency or authority or any private institution

which furnished information on a confidential bases, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source." 5 U.S.C. § 552 (b)(7)(D)

55. When asserting Exemption 7(D), ICE determined whether the source provided information under an expressed promise of confidentiality, or under circumstances where such confidentiality could be reasonable inferred.

56. Here, ICE applied Exemption 7(D) to the names, physical addresses, and email domain names of private companies that participated in the underlying Operation that was the substance of the Plaintiff's FOIA request. Each of the companies whose name and/or address has been withheld under Exemption 7(D) provided information to ICE to assist in a federal criminal law enforcement investigation under an expressed promise that ICE would not reveal to the public that they participated in this Operation. If released, foreseeable harm would result to both the companies that provided the information under the promise of confidentiality and to ICE, who relies upon the information these companies provide during the course of their law enforcement operations.

## VI. SEGREGABILITY

57. 5 U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."

58. A line-by-line review was conducted to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied.

59. With respect to the records that were released, all information not exempted from disclosure pursuant to the FOIA exemptions specified above was correctly segregated and non-exempt portions were released. ICE did not withhold any non-exempt information on the grounds that it was non-segregable.

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief.

Signed this 21st day of October, 2019.

_____
Toni Fuentes, Deputy FOIA Officer
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009