**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
FLOOR64, INC., et al.,                          )
                                                    )
     Plaintiffs,                              )
                                                    )
     v.                                          )     Civil Action No.: 19-1499 (CKK)
                                                    )
U.S. IMMIGRATION AND CUSTOMS      )
ENFORCEMENT,                                )
                                                    )
     Defendant.                              )
_____)

### DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES

By and through its undersigned counsel, defendant, U.S. Immigration and Customs Enforcement ("ICE"), respectfully moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  ICE has satisfied all of its obligations pursuant to the Freedom of Information Act ("FOIA") in response to plaintiff's request for records.  As explained below, ICE has conducted adequate searches for responsive records and has produced responsive records to plaintiffs.  It also has properly applied FOIA exemptions to withhold portions of the released records, as described in the attached declaration of Toni Fuentes and the exhibits thereto.

### FACTUAL BACKGROUND

This suit stems from a FOIA request that plaintiffs submitted to ICE on December 14, 2018.  Plaintiffs sought the following records:

> "A full list of the domain names that were seized, any related court filings regarding the domain seizures and any email communications with the "high-profile industry representatives and anti-counterfeiting associations" regarding those seizures, as described in a November 26th press release, seen here: https://www.ice.gov/news/releases/over-million-websites-seized-global-operation."

*See* Fuentes Decl. at ¶ 6 & Ex. 2 thereto.  After exhausting their administrative remedies, plaintiffs filed suit, following which ICE released 75 pages of records with redactions pursuant to

Exemptions 6, 7(C), and 7(D).  *See* Fuentes Decl. at ¶¶ 8-9. At issue are the adequacy of ICE's search and the application of those exemptions.

## LEGAL STANDARDS AND STANDARD OF REVIEW

### A.  FOIA

Congress has enacted the FOIA, 5 U.S.C. § 552, in order to insure that "agency action[s are opened] to the light of public scrutiny." *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)).  The FOIA is, thus, "a means for citizens to know 'what their Government is up to.'" *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171–72 (2004) (citation and internal quotation marks omitted).  FOIA requires federal agencies to release all records responsive to a request for production unless a specific exemption is applicable.  *See* 5 U.S.C. § 552(a)(3)(A), (4)(B) and 5 U.S.C. § 552(b).  It "allows agencies to withhold only those documents that fall under one of nine specific exemptions, which are construed narrowly in keeping with FOIA's presumption in favor of disclosure." *Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 869 (D.C. Cir. 2010) (citations omitted).  When a FOIA requester properly exhausts his administrative remedies, he may file a civil action challenging an agency's response to his request.  *See* 5 U.S.C. § 552(a)(4)(B); *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004).  Once such an action is filed, the agency generally has the burden of demonstrating that its response to Plaintiff's FOIA request was appropriate.  *See id.* at 678.

### B.  Summary Judgment

Where no genuine dispute exists as to any material fact, summary judgment is required. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).  A genuine issue of material fact is one that would change the outcome of the litigation.  *See id.*  "The burden on the moving party

may be discharged by 'showing' – that is, pointing out to the [Court] – that there is an absence of evidence to support the non-moving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.,* 833 F.2d 1560, 1563 (Fed. Cir. 1987) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)).   Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).   Thus, to avoid summary judgment here, Plaintiff must present some objective evidence that would enable the Court to find he is entitled to relief.

In responding to a motion for summary judgment, the opposing party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. *Celotex Corp.,* 477 U.S. at 322-23.   The Supreme Court has further explained that "the mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff." *Anderson,* 477 U.S. at 252; *see also Laningham v. Navy,* 813 F.2d 1236, 1242 (D.C. Cir. 1987) (establishing that the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor).   "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

These summary judgment standards set forth above also apply to FOIA cases, which "typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol,* 623 F. Supp. 2d 83, 87 (D.D.C. 2009).   In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute when

viewing the facts in the light most favorable to the non-moving party. *See Founding Church of Scientology of Wash., D.C., Inc. v. NSA,* 610 F.2d 824, 836 (D.C. Cir. 1979).  The moving party must show that each record that falls within the class requested has been produced, is unidentifiable, or is exempt from disclosure. *See Exxon Corp. v. FTC,* 663 F.2d 120, 126 (D.C. Cir. 1980) (holding that an index of documents and two affidavits describing the search as well as which documents were produced and which were exempt was sufficient for the Commission to prevail on a summary judgment motion).

An agency satisfies the summary judgment requirements in a FOIA case by providing affidavits or declarations and other evidence that show that the records in question were produced or are exempt from disclosure. *See Goland v. CIA,* 607 F.2d 339, 353 (D.C. Cir. 1978) (holding that an affidavit that provides "detailed descriptions of the searches undertaken, and a detailed explanation of why further searches would be unreasonably burdensome" is sufficient for the Agency to win on a motion for summary judgment); *McGehee v. CIA,* 697 F.2d 1095, 1102 (D.C. Cir. 1983) (affirming that the district court may "rely upon affidavits submitted by the agency, describing its search procedures and explaining why a more thorough investigation would have been unduly burdensome"); *Trans Union LLC v. FTC,* 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (reiterating that summary judgment in FOIA cases may be awarded solely on the basis of agency affidavits).

With respect to an agency's nondisclosure decisions in a FOIA action, the Court may rely on affidavits or declarations if they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C. Cir. 1981); *SafeCard*

*Servs., Inc. v. SEC,* 926 F.2d 1197, 1200 (D.C. Cir. 1991) (affidavits and declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents").

"Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Larson v. Dep't of State,* 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Wolf v. CIA,* 473 F.3d 370, 374-75 (D.C. Cir. 2007)).  In assessing the logic and plausibility of an agency assertion of an exemption, "reviewing courts [should] respect the expertise of an agency." *Hayden v. NSA,* 608 F.2d 1381, 1388 (D.C. Cir. 1979).

## ARGUMENT

### I.  ICE CONDUCTED A REASONABLE SEARCH AND PROPERLY DOCUMENTED ITS WITHHOLDINGS

An agency must release all records responsive to a properly submitted FOIA request unless the records are protected from disclosure by one or more of the FOIA's nine exemptions. *See* 5 U.S.C. § 552(b); *see also Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 150-51 (1989).  As shown below, ICE conducted an adequate search for records responsive to plaintiffs' FOIA request and produced all non-exempt records.  Therefore, ICE is entitled to summary judgment.

### A.  ICE's Searches Were Reasonably Calculated To Uncover All Records Responsive To Plaintiff's FOIA Request

The FOIA requires an agency to undertake a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Justice,* 705 F.2d 1344, 1351 (D.C. Cir. 1983).  Such searches are "adequate" as a matter of law. *Valencia-Lucena v. U.S. Coast Guard,* 180 F.3d 321, 325 (D.C. Cir. 1999); *see also Oglesby v. Dep't of the Army,* 920 F.2d 57, 68 (D.C. Cir. 1990) ("[T]he agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information

requested."). A search is not rendered inadequate merely because it failed to "uncover every document extant." *SafeCard Servs,* 926 F.2d at 1201.

A search is inadequate only if the agency cannot "show, with reasonable detail, that the search method . . . was reasonably calculated to uncover all relevant documents." *Oglesby,* 920 F.2d at 68. Once the agency demonstrates the adequacy of its search, the FOIA requestor must show "that the agency's search was not made in good faith." *Maynard v. CIA,* 986 F.2d 547, 560 (1st Cir. 1993). Unsupported assertions of bad faith are insufficient to raise a material question of fact with respect to the adequacy of an agency's search for purposes of summary judgment. *See Oglesby,* 920 F.2d at 67 & n.13. Moreover, "[a]gency affidavits enjoy a presumption of good faith that withstands purely speculative claims about the existence and discoverability of other documents." *Chamberlain v. Dep't of Justice,* 957 F. Supp. 292, 294 (D.D.C. 1997), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997).

Here, the ICE FOIA Office determined that based the subject matter of plaintiffs' Request, the Offices of Homeland Security Investigations ("HIS") and the Office of Public Affairs ("OPA") were the offices likely to have responsive records. It therefore instructed HSI and OPA to conduct a comprehensive search for records and to provide all records located during that search to the ICE FOIA Office for review and processing. *See* Fuentes Decl. at ¶ 25.

### 1.    OPA's Search

OPA supports the agency mission by engaging with the news media, federal, state and local agencies and non-governmental organizations. Within OPA there is media relations, strategic communications, and the mission support branch. The Media Relations Branch includes 30 public affairs officers located in Washington, D.C. and around the country who are responsible for responding to local, national and international media inquiries, planning press events, crafting

agency messaging and developing media campaigns.  The Strategic Communications Branch of public affairs oversees the development and production of a wide variety of online, print and multi-media products, as well as writing executive level speeches, internal communication, managing ICE's online presence and developing national marketing plans for ICE and its programs. The mission support branch handles the day to day running of OPA's financial and administrative work and ensures that the other two branches are fully supported.  When OPA receives a FOIA request, the OPA FOIA POC will review the request and task to the branch or branches within OPA that are likely to have responsive records.  *See* Fuentes Decl. at ¶ 26.

On December 17, 2018, the ICE FOIA Office tasked OPA in responding to plaintiffs' request.  Based upon the nature of the request for "domain names that were seized, any related court filings regarding the domain seizures and any email communications with the "high-profile industry representatives and anti-counterfeiting associations"" and the subject matter expertise of the OPA FOIA POC, OPA notified the ICE FOIA Office that OPA would not reasonably be likely to have responsive records or would not reasonably be expected to have responsive records to this request.  OPA then deferred to HSI in responding to the FOIA request.  *See* Fuentes Decl. at ¶ 27.

### 2.    HSI's search

HSI is a critical investigative arm of the DHS and is a vital U.S. asset in combating criminal organizations illegally exploiting America's travel, trade, financial and immigration systems. HSI's workforce includes special agents, analysts, auditors and support staff.  HSI has broad legal authority to enforce a diverse array of federal statutes.  It uses this authority to investigate all types of cross-border criminal activity including: financial crimes, money laundering and bulk cash smuggling; commercial fraud and intellectual property theft; cybercrimes; human rights violations; human smuggling and trafficking; immigration, document and benefit fraud; narcotics and

weapons smuggling/trafficking; transnational gang activity; export enforcement; and international art and antiquity theft.   HSI has 26 Special Agent in Charge ("SAC") principal field offices throughout the United States.   The SAC offices are responsible for the administration and management of all investigative and enforcement activities within the geographic boundaries of the office.  *See* Fuentes Decl. at ¶ 28.

When HSI receives a FOIA tasking from the ICE FOIA Office, the request is submitted to HSI Records and Disclosure Unit ("RDU"), where the FOIA Section Chief reviews the substance of the FOIA request.  Based on subject matter expertise and knowledge of the internal practices of offices within HSI, RDU tasks a geographic SAC office, program office and/or specific individual(s) to conduct searches of their file systems, including both paper files and electronic files, based on their knowledge of routine file maintenance where responsive records would most likely be located.   If the FOIA request pertains to a specific operation, the program office responsible for that operation will be tasked.   Employees tasked with conducting searches, rely upon the language of the request, guidance from the FOIA Section Chief as well as their operational knowledge and subject matter expertise, to identify the specific search term(s) or combinations thereof, most likely to produce responsive records.   Once searches are completed, the individuals and program offices provide any potentially responsive records to RDU to analyze for HSI law enforcement equities and recommend disclosures to the ICE FOIA Office.  The ICE FOIA Office then reviews the collected records and disclosure recommendations and applies redactions to withhold statutorily exempt information before making a disclosure to the requester. *See* Fuentes Decl. at ¶ 29.

Within HSI is the Operation Technology and Cyber Division ("OTCD").   The OTCD supports ICE and HSI by improving methods for managing different types of information and

operational technology, and directing how these tools are shared with other agencies and organizations.  Programs and projects under the OTCD focus on merging methods and technology that result in better law enforcement operations.  One element within OTCD is the Cyber Crimes Center ("C3").  C3 role is to conduct trans-border criminal investigations of internet-related crimes and is responsible for identifying and targeting any cybercrime activity in which HSI has jurisdiction. *See* Fuentes Decl. at ¶ 30.

The Global Trade Investigations Division ("GTI") is a program office that provides oversight and support for investigations of the U.S. import and export laws to ensure national security, protect the public's health and safety, stop predatory and unfair trade practices and to prevent terrorists, foreign entities and criminal organizations from illegally trafficking Weapons of Mass Destruction and transferring critical technology and arms to restricted or prohibited persons, groups or nations.  Within GTI, there is the National Intellectual Property Rights Coordination Center ("IPR Center").  The IPR Center responsible for coordinating a unified U.S. government response to the growing threat of counterfeiting and has significantly expanded the original multi-agency law enforcement and regulatory endeavor created to target IP crimes. The IPR Center comprises the Intellectual Property Unit and Commercial Fraud Unit that is also responsible for IPR Center's outreach and training. In addition, the IPR Center brings together 23 key federal and international agencies in a task force setting using a three-pronged approach to combat Intellectual Property ("IP") and trade crime: interdiction, investigation, and outreach to the public and law enforcement. *See* Fuentes Decl. at ¶ 31.

On December 17, 2018, the ICE FOIA Office tasked HSI with responding to plaintiffs' FOIA request.  RDU reviewed the request and, because the request referred to seizures and the internet, tasked OTCD C3 to conduct a search.  Within C3, one Special Agent conducted a search

of his computer and Outlook using the term "IPR" and "ICE IPR Center" based upon the press release provided by the plaintiffs and his subject matter expertise.  No records responsive to the request were located.  One Special Agent conducted a search of his computer and Outlook using the terms "seized" and "website" based upon the press release provided by the plaintiffs and his subject matter expertise.  No records responsive to the request were located.  One Special Agent conducted a search of Outlook using "Operation In Our Sites" based upon the press release provided by the plaintiffs and his subject matter expertise.  No records responsive to the request were located. However, this Special Agent did note on the returned search form that he believed the IPR Center may have responsive records.  However, the IPR Center was not tasked to conduct a search at this administrative level and on February 19, 2019, the ICE FOIA Office notified the plaintiffs that no responsive records were located. *See* Fuentes Decl. at ¶ 32.

Upon appellate review, the Office of the Principal Legal Advisor (OPLA) contacted RDU on March 20, 2019 and requested that RDU review the previous "no records" response in regard to plaintiffs' FOIA request.  RDU reviewed the FOIA request and previous search and determined that the wrong office within HSI was tasked to conduct the search.  RDU then determined that the correct office that should be tasked was the IPR Center.  On April 9, 2019, RDU forwarded plaintiffs' FOIA request to GTI so that the IPR Center could conduct a search for responsive records.  *See* Fuentes Decl. at ¶ 33.

Upon receipt of the FOIA request from RDU, the IPR Center FOIA POC reviewed the substance of the request and, based upon experience and knowledge of their office's practices and activities, determined that the Program Manager for "Operation in Our Sites" should be tasked with conducting the search.  The Program Manger conducted a search of his computer and Outlook files using the name of the Operation as his search terms and produced 75 pages of responsive

documents that were forwarded to HSI RDU for review.  HSI RDU provided these 75 pages to the ICE FOIA Office for processing.  *See* Fuentes Decl. at ¶ 34.

On September 13, 2019, ICE, through counsel, responded to follow-up questions from plaintiffs regarding the responsive documents that were produced.  Specifically, ICE explained that in regard to the domain seizures, ICE provided all records in its possession relating to the domain seizures.  ICE further explained that of the websites that were criminally seized, the majority of them were seized by Europol, Interpol and police agencies from 26 different countries and that these partners did not share the domain names of those websites with ICE.  Further, in regard to the remaining domain names, other industry partners were involved in the seizure of those websites and did not provide the domain names of those websites to the IPR Center.   Lastly, ICE explained that it was not involved with, and does not have any records relating to, any court filings relating to the seizure, civilly or criminally, of domain names. *See* Fuentes Decl. at ¶ 35.

Because ICE conducted a search reasonably calculated to locate all responsive records, summary judgment is warranted on that aspect of the case.

## II.     ICE CORRECTLY APPLIED THE FOIA EXEMPTIONS TO THE RESPONSIVE RECORDS

ICE's withholdings are described with particularity in the *Vaughn* index and represent straightforward and established applications of the FOIA exemptions.

### A.      ICE's *Vaughn* Index Reasonably Explains The Withholdings

In moving for summary judgment in a FOIA case, an agency must establish a proper basis for withholding responsive records.  "In response to this special aspect of summary judgment in the FOIA context, agencies regularly submit affidavits . . . in support of their motions for summary judgment against FOIA plaintiffs." *Judicial Watch v. HHS,* 27 F. Supp. 2d 40, 242 (D.D.C. 1998). Included with these declarations or affidavits is what is often referred to as a "Vaughn Index,"

which contains a description of each record withheld, the applicable FOIA exemption, and the basis for withholding the information.  *See Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir. 1973).  There is no set formula for a Vaughn Index.

"[I]t is well established that the critical elements of the Vaughn Index lie in its function, and not in its form."  *Kay v. FCC,* 976 F. Supp. 23, 35 (D.D.C. 1997), *aff'd,* 172 F.3d 919 (D.C. Cir. 1998).  "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege."  *Delaney, Midgail & Young, Chartered v. IRS,* 826 F.2d 124, 128 (D.C. Cir. 1987); *see also Keys v. Dep't of Justice,* 830 F.2d 337, 349 (D.C. Cir. 1987); *Hinton v. Dep't of Justice,* 844 F.2d 126, 129 (3d Cir. 1988).  "All that is required, and that is the least that is required, is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure."  *Id.* at 128.  The specificity of itemization needed depends upon the nature of the document and the exemption asserted.  *Info. Acquisition Corp. v. Dep't of Justice,* 444 F. Supp. 458, 462 (D.D.C. 1978).

The *Vaughn* Index serves a threefold purpose: (1) it identifies each document withheld; (2) it states the applicable statutory exemption; and (3) it explains how disclosure would damage the interests protected by the claimed exemption.  *See Citizens Comm'n on Human Rights v. FDA,* 45 F.3d 1325, 1326 n.1 (9th Cir. 1995).  "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA."  *Founding Church of Scientology v. Bell,* 603 F.2d 945, 949 (D.C. Cir. 1979).

Here, the ICE met this standard.  The enclosed *Vaughn* index identifies the documents withheld and the applicable exemptions.  *See* Fuentes Decl. at Ex. 1.  The *Vaughn* index and Fuentes Declaration further discuss each exemption and withholding and how disclosure would damage the Department's interests.  In short, ICE has appropriately documented its withholdings under *Vaughn*.

### B.       ICE Correctly Applied The FOIA Exemptions

FOIA "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential*." Ctr. for Nat'l Sec. Studies v. Dep't of Justice,* 331 F.3d 918, 925 (D.C. Cir. 2003) (citing *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 152 (1989)).  Accordingly, FOIA requires agencies to release documents responsive to a properly submitted request, but also provides nine statutory exemptions to this general disclosure obligation.  *See* 5 U.S.C. §§ 552(a)(3), (b)(1)-(b)(9).  While the nine exemptions should be "narrowly construed," *FBI v. Abramson,* 456 U.S. 615, 630 (1982), the Supreme Court has made clear that courts must give them "meaningful reach and application." *John Doe Agency,* 493 U.S. at 152.

"Thus, while 'disclosure, not secrecy, is the dominant objective of FOIA,' there are [nine] exemptions from the statute's broad reach[.]" *U.S. Dep't of Def. v. FLRA,* 510 U.S. 487, 494 (1994) (quoting *Dep't of Air Force v. Rose,* 425 U.S. 352, 361 (1976).  "These exemptions stem from Congress's recognition that the release of certain information may harm legitimate governmental or private interests." *Summers v. DOJ,* 140 F.3d 1077, 1080 (D.C. Cir. 1998).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA,* 473 F.3d 370, 374-75 (D.C. Cir. 2007) (quoting *Gardels v. CIA,* 689 F.2d 1100, 1105 (D.C. Cir. 1982)).

As outlined in the *Vaughn* Index, the ICE FOIA Office processed and produced the 75 pages to plaintiffs with portions redacted under Exemptions 6, 7(C), and 7(D).  *See* Fuentes Decl. at ¶ 37.

### A.      ICE Correctly Applied Exemption 6 and 7(C)

FOIA Exemption 6 provides for the withholding of matters contained in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The primary purpose of enacting Exemption 6 was "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information."  *Dep't of State v. Wash. Post Co.,* 456 U.S. 595, 599 (1982).  The Supreme Court has adopted a broad construction of the privacy interests protected by this exemption, has rejected a "cramped notion of personal privacy[,]" and has emphasized that "privacy encompass[es] the individual's control of information concerning his or her person."  *Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 763 (1989).

Privacy is of particular importance in the FOIA context because a disclosure required by FOIA is a disclosure to the public at large.  *See Painting & Drywall Work Pres. Fund, Inc. v. Dep't of Housing and Urban Dev.,* 936 F.2d 1300, 1302 (D.C. Cir. 1991).  Moreover, "even though 'an event is not wholly 'private' [it] does not mean that an individual has no interest in limiting disclosure or dissemination of the information.'"  *Fed. Labor Relations Auth. v. Dep't of Veterans Affairs,* 958 F.2d 503, 510 (2d Cir. 1992) (quoting *Reporters Comm.,* 489 U.S. at 763).  The Supreme Court has concluded that "as a categorical matter . . . a third party's request for . . . information about a private citizen can reasonably be expected to invade that citizen's privacy."  *Reporters Comm.*, 489 U.S. at 780.  "The threshold is fairly minimal, such that all information which applies to a particular individual is covered by Exemption 6, regardless of the type of file

in which it is contained." *Conception v. FBI,* 606 F. Supp. 2d 14, 35 (D.D.C. 2009) (citations and internal quotation marks omitted).  In evaluating an Exemption 6 withholding, a court must balance the subject individual's right to privacy against the public's interest in disclosure.  *Dep't of Air Force v. Rose,* 425 U.S. 352, 372 (1976); *see also Am. Civil Liberties Union v. Dep't of Justice,* 698 F.Supp.2d 163 (D.D.C. 2010) ("The proper application of . . . [E]xemption 6 requires a balancing of individual privacy interests against the public interest.") (citing *Reporters Comm.,* 489 U.S. at 776)).  As the D.C. Circuit has stated: "since this is a balancing test, any invasion of privacy can prevail, so long as the public interest balanced against it is sufficiently weaker.  The threat to privacy thus need not be patent or obvious to be relevant.  It need only outweigh the public interest." *Pub. Citizen Health Research Grp. v. Dep't of Labor,* 591 F.2d 808, 809 (D.C. Cir. 1978).

If an individual's privacy interest is implicated, then a FOIA requestor must show that: "(1) the public interest is a significant one; and (2) the information is likely to advance that interest." *Singleton v. Exec. Office for U.S. Attorneys*, Civ. A. No. 05-2413 (EGS), 2006 WL 3191186, at *4 (D.D.C. Nov. 1, 2006) (citing *Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 172 (2003)); *see also Carter v. Dep't of Commerce,* 830 F.2d 388, 391-92 nn.8 & 13 (D.C. Cir. 1987) (a plaintiff bears the burden of demonstrating that the release of the withheld documents would serve this interest.).  The review of an agency's withholding under Exemption 6 proceeds in two stages: first, the Court must decide whether the information is subject to protection under the exemption; and second, the Court must determine whether disclosure would constitute a "clearly unwarranted invasion of personal privacy." *Wash. Post Co. v. Dep't of Health & Human Servs.*, 690 F.2d 252, 260 (D.C. Cir. 1982).  With respect to the first stage, the threshold for the application of Exemption 6 is "minimal." *Id.*  As previously indicated, Exemption 6 provides for the

withholding of matters contained in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."   5 U.S.C. §552(b)(6).   "The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual." *Lepelletier v. Fed. Deposit Ins. Corp.,* 164 F.3d 37, 46 (D.C. Cir. 1999) (quoting *Dep't of State v. Wash. Post Co.,* 456 U.S. at 602 ("The term 'similar files' is not "limited to files containing 'intimate details' and 'highly personal' information," and is, instead, intended by Congress "to have a broad, rather than a narrow, meaning.")).

The Court also has emphasized that "both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person." *Reporters Comm.,* 489 U.S. at 763.   The Supreme Court has found that "[i]ncorporated in the 'clearly unwarranted' language is the requirement for . . . [a] 'balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information.'"   *Lepelletier,* 164 F.3d at 46 (citing *Dep't of Def. v. Fed. Labor Relations Auth.,* 964 F.2d 26, 29 (D.C. Cir. 1992) (citations omitted)).   In determining how to balance the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA: "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'"   *Lepelletier,* 164 F.3d at 46 (quoting *Fed. Labor Relations Auth.,* 510 U.S. at 497); *see also Reporters Comm. for*, 489 U.S. at 773.

Exemption 7(C) similarly protects from disclosure "records or information compiled for law enforcement purposes" to the extent that the disclosure of law enforcement records or

information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  In assessing whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. Dep't of Justice,* 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal quotations omitted).  "[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope." *Mittleman v. Office of Personnel Mgmt.,* 76 F.3d 1240, 1243 (D.C. Cir. 1996) (citing *Pratt v. Webster*, 673 F.2d 408, 420 n.32 (D.C. Cir. 1982)).  When, however, a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." *Keys v. U.S. Dep't of Justice,* 830 F.2d 337, 340 (D.C. Cir. 1987).  A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least 'a colorable claim' of its rationality.'" *Keys*, 830 F.2d at 340 (quoting *Pratt*, 673 F.2d at 421).

In applying Exemption 7(C), a court should "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Davis v. U.S. Dept. of Justice,* 968 F.2d 1276, 1281 (D.C. Cir. 1992).  However, here, as under Exemption 6, courts recognize the considerable stigma inherent in being associated with law enforcement proceedings and accordingly "do[] not require a balance tilted emphatically in favor of disclosure" when reviewing a claimed 7(C) Exemption.  *Bast v. Dep't of Justice,* 665 F.2d 1251, 1254 (D.C. Cir. 1981).

As explained by the D.C. Circuit, Exemptions 6 and 7(C) are logically analyzed at the same time in requests for law enforcement information because both call for balancing the same

interests. *ACLU v. Dep't of Justice,* 655 F.3d 1, 6 (D.C. Cir. 2011). "[B]ecause Exemption 7(C) permits withholding of such records if disclosure would constitute an 'unwarranted' invasion of personal privacy, while Exemption 6 requires a 'clearly unwarranted' invasion to justify nondisclosure, 'Exemption 7(C) is more protective of privacy than Exemption 6' and thus establishes a lower bar for withholding material." *Id.* (emphasis added).

### 1.    Exemption 7 Threshold Requirement

Here, the information for which FOIA Exemption 7 has been asserted in the instant matter satisfies the threshold law enforcement requirement. Pursuant to the Immigration and Nationality Act codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions. *See* 8 U.S.C. § 1103. ICE is the largest investigative arm of the DHS and the second largest investigative agency in the federal government. Created in 2003 through a merger of the investigative and interior enforcement elements of the U.S. Customs Service and the Immigration and Naturalization Service, ICE now has more than 20,000 employees and offices in all 50 states and 48 foreign countries, and is responsible for enforcing the nation's immigration laws, and identifying and eliminating vulnerabilities within the nation's borders. *See* Fuentes Decl. at ¶ 40.

There are three directorates within ICE, including, as relevant here, HSI. HSI investigates domestic and international activities that arise from the illegal movement of people and goods into, within, and out of the United States. These include, for example, immigration fraud, human rights violations, financial crimes, cybercrime, export enforcement issues, and human, narcotics, and weapons smuggling. In addition to criminal investigations, HSI oversees ICE international affairs questions and intelligence functions. As a threshold matter, the records and information located

in response to plaintiffs' FOIA request were collected and compiled by ICE law enforcement officers during the investigation of suspected violations of criminal laws.  Therefore, the records and information located in response to the FOIA request were compiled for law enforcement purposes and meet the threshold requirement of FOIA Exemption 7.  *See* Fuentes Decl. at ¶ 41.

### 2.        Application of Exemptions 6 and 7(C)

When asserting Exemptions 6 and 7(C), ICE balances the individual's personal privacy interest against the public's interest in obtaining information that sheds light on ICE's performance of its statutory duties.  *See* Fuentes Decl. at ¶ 43.  Here, ICE applied Exemption 6 in conjunction with Exemption 7(C) to protect from disclosure the names, email addresses, and phone numbers of federal law enforcement officers, and the names, email addresses, and phone numbers of third parties.  *See* Fuentes Decl. at ¶ 44.

In regard to the information about federal law enforcement employees, by virtue of the positions held referenced in the responsive records, they are permitted access to official law enforcement investigation information.  ICE gave consideration to the privacy interests of these federal law enforcement employees in not becoming targets of harassment - be it in the form of requests for authorized access to law enforcement information or requests for information about ongoing or closed investigations - and their interest in remaining free of interference in the performance of their duties by persons who are currently of interest to law enforcement or oppose the ICE mission.  In addition, there are privacy considerations at issue in the interest of each of these individuals in remaining free from harassment and annoyance in conducting their official duties in the future, their interest in remaining free from harassment and annoyance in their private lives, and their interest in not being targeted by individuals in the future who may begrudge them.  *See* Fuentes Decl. at ¶ 45.

Further, federal law enforcement employees who take part in highly-publicized or sensitive investigations or operations have an interest in keeping their involvement in such activities private in order to avoid an onslaught of media attention or stigma and undue public attention. These federal law enforcement employees face an increased risk of harassment or attack, and, therefore, have an increased privacy interest due to the nature of their work. *See* Fuentes Decl. at ¶ 46.

With respect to information contained in the responsive records specific to third parties, if released, such information if released would permit the identity of an individual to be directly or indirectly inferred. Third party individuals have a recognized privacy interest in not being publicly associated with law enforcement investigations through the release of records compiled for law enforcement purposes. The identities of persons named in law enforcement files (whether or not the named individual is the target of investigations or law enforcement actions) are properly withheld under Exemptions 6 and 7(C) in recognition of the stigmatizing connotation carried by the mere mention of individuals in law enforcement files. *See* Fuentes Decl. at ¶ 47.

In addition, ICE considered the privacy interests of the third parties in remaining free from embarrassment, humiliation, annoyance, harassment, intimidation, unofficial questioning, retaliation or physical harm for having been identified in these law enforcement records. *See* Fuentes Decl. at ¶ 48. Such information, if disclosed to the public or to a third-party requester without the permission of the individual, could expose the individuals to identity theft and may reasonably lead to unwanted contact from persons that might seek to harm them. *See* Fuentes Decl. at ¶ 49.

ICE determined that the disclosure of the information described above would constitute a clearly unwarranted invasion of personal privacy and thus applied Exemption 6. In addition, ICE determined that disclosure of the information described was compiled for law enforcement

purposes and could reasonably be expected to constitute an unwarranted invasion of personal privacy, and it thus applied Exemption 7(C).   *See* Fuentes Decl. at ¶ 50.

Having determined that the individuals identified in the responsive records have a cognizable privacy interest in not having their information released, ICE FOIA then balanced the interest in safeguarding the individuals' privacy from unnecessary public scrutiny against the public's interest in obtaining information that would shed light on the operations and activities of ICE in the performance of its statutory duties.  Plaintiffs have failed to articulate any public interest that could be advanced by releasing this information and in each instance where Exemptions 6 and 7(C) were applied, the redaction was limited to the name of the individual or other personally identifiable information, which if released, would not shed any further light as to the operations or activities of ICE.  All of the information surrounding the redactions was released and the limited extent of the redaction is readily apparent from the context of the records.  *See* Fuentes Decl. at ¶ 51.

Based upon the traditional recognition of strong privacy interests in law enforcement records, the categorical withholding of third party information identified in law enforcement records is appropriate. Moreover, the third parties identified in these records have not provided consent to the release of their personally identifying information as required by 6 C.F.R. §§ 5.3(a)(4) & 5.21(d).  *See* Fuentes Decl. at ¶ 52.

### C.    ICE Appropriately Applied Exemption 7(D)

When asserting Exemption 7(D), ICE determined whether the source provided information under an expressed promise of confidentiality, or under circumstances where such confidentiality could be reasonably inferred.  *See* Fuentes Decl. at ¶ 54.  ICE applied Exemption 7(D) to the names, physical addresses, and email domain names of private companies that participated in the

underlying operation that was the substance of plaintiff's FOIA request.  Each of the companies whose name and/or address has been withheld under Exemption 7(D) provided information to ICE to assist in a federal criminal law enforcement investigation under an expressed promise that ICE would not reveal to the public that they participated in this operation.  *See* Fuentes Decl. at ¶ 55.

## III.     ICE COMPLIED WITH THE FOIA'S SEGREGATION REQUIREMENT

If a record contains information exempt from disclosure, the FOIA requires that any "reasonably segregable," non-exempt information be disclosed after redaction of the exempt information.  5 U.S.C. § 552(b).  Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of the Air Force,* 566 F.2d 242, 260 (D.C. Cir. 1977).  To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with reasonable specificity" that the information withheld cannot be segregated. *Armstrong v. Exec. Office of the President,* 97 F.3d 575, 578-79 (D.C. Cir. 1996) (internal quotation marks omitted); *Canning v. Dep't of Justice,* 567 F. Supp. 2d 104, 110 (D.D.C. 2008); *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("government's declaration and supporting material are sufficient to satisfy its burden to show with 'reasonable specificity' why the document cannot be further segregated," where declaration averred that agency had "'released to plaintiff all material that could be reasonably segregated'"); *Loving v. Dep't of Def.,* 496 F. Supp. 2d 101, 110 (D.D.C. 2007), *aff'd,* 550 F.3d 32 (2008).  Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." *Mead Data,* 566 F.2d at 261, n.55.

Here, ICE carefully redacted information protected by a FOIA exception and determined that there was no further segregable, non-exempt information.  A line-by-line review was

conducted to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied. *See* Fuentes Decl. at ¶ 57. With respect to the records that were released, all information not exempted from disclosure pursuant to the FOIA exemptions specified above was correctly segregated and non-exempt portions were released. ICE did not withhold any non-exempt information on the grounds that it was non-segregable. *See* Fuentes Decl. at ¶ 58.

## CONCLUSION

In summary, ICE has searched all locations reasonably likely to contain documents responsive to plaintiffs' FOIA request and released all reasonably segregable responsive documents subject to well-established exemptions. Consequently, the Court should grant summary judgment in its favor.

Respectfully submitted,

JESSIE K. LIU, D.C. Bar No. 472845
United States Attorney

DANIEL F. VAN HORN, D.C. Bar No. 924092
Chief, Civil Division

By:    /s/   *Damon Taaffe*
DAMON TAAFFE, D.C. Bar No. 483874
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2544
damon.taaffe@usdoj.gov